UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAMES PAUL ANDREW TORFASON,<br><br>         Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security<br><br>         Defendant. | Case No.: 5:12-CV-01649-EJD<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**[Re: Docket Nos. 13, 20]** |

Plaintiff James Paul Andrew Torfason ("Plaintiff") filed this action on September 14, 2012 pursuant to 42 U.S.C. §§ 405(g) and 1383(c), appealing the decision of Michael J. Astrue, Commissioner of Social Security ("Defendant"), which denied his claim for disability insurance benefits. Presently before the Court is Plaintiff's Motion for Summary Judgment, in which he seeks an order reversing the final decision of the Commissioner and awarding benefits, or, in the alternative, an order remanding for further administrative proceedings. Dkt. No 13. Defendant opposes the motion and cross-moves for summary judgment. Dkt. No. 20. Having reviewed the parties' papers and the administrative record, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment.

**I.     BACKGROUND**

Plaintiff was born on April 27, 1979 and is a high school graduate. Administrative Record ("AR") at 32, 45-47, 168. Plaintiff took some college courses but did not complete his courses or

1

Case No.: 5:12-CV-01649-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

graduate. Id. He has a history of substance abuse (including alcohol, marijuana, cocaine, LSD, and methamphetamines) but his dependency is in institutional remission. AR 27, 343. Plaintiff has been incarcerated at times, and his last release was in October 2010. AR 25, 47-48. Plaintiff currently lives in a motel room paid for by the parole authorities, who also furnish counseling and therapy; he does not receive any other benefits. Id. He has worked as a security guard, a courier, a fast food restaurant employee, and a landscaper.  AR 25, 238, 292, 343. Even while employed, his parents provided him with some financial assistance. AR 25. At the time of the hearing before the ALJ on December 2, 2010 Plaintiff was thirty-one years old. AR at 45.

At age nine Plaintiff was diagnosed with Tourette's syndrome, but this diagnosis was never reaffirmed or specifically treated. AR 27, 358. Plaintiff alleges disability from Tourette's syndrome, bipolar disorder, and attention deficit and hyperactivity disorder ("ADHD"). AR 23, 101. Plaintiff's records also show chronic lumbar and left knee pain. AR 27, 346-347.

Plaintiff has admitted to lying in order to manipulate the system; in the past he has stated that he has never had any mental health symptoms but has faked them for secondary gain. AR 26-30. He admits that he has successfully misled a number of medical professionals in order to obtain the result he wanted. Id. He has also been convicted of crimes involving moral turpitude. AR 31.

On October 30, 2008, Plaintiff filed an application for supplemental security income ("SSI") alleging disability beginning March 6, 1998. AR 21, 78. The claim was initially denied on April 7, 2009, and again upon reconsideration on June 18, 2009. AR 21, 96-106. Thereafter, Plaintiff filed a written request for a hearing, which was held on December 2, 2010, before Sharon L. Madsen, Administrative Law Judge. AR 21, 109-160. An impartial vocational expert, Cheryl R. Chandler, also appeared at the hearing. AR 21, 43. Although informed of the right to representation, Plaintiff chose to appear and testify without the assistance of an attorney or other representative. Id.

In a decision dated December 22, 2010, the ALJ found Plaintiff to have numerous severe impairments, including a history of Tourette's syndrome, obsessive-compulsive disorder ("OCD"), narcissistic personality disorder, schizoaffective disorder, depression, history of polysubstance

abuse and pedophilia. AR 23-24. However, the ALJ found that Plaintiff's mental impairments cause no episodes of decompensation, and only mildly or moderately restrict his activities of daily living, social functioning and concentration. Id. As to Plaintiff's knee and lumbar pain, the ALJ did not find that these impairments caused any exertional postural or other physical limitations. AR 31-32.

Accordingly, the ALJ found that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitation: he is restricted to simple, routine tasks and occasional contact with coworkers, supervisors, and the public. AR 23-24. Although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ found that his statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they are inconsistent with the above residual functional capacity assessment. AR 30. Based on the determination that Plaintiff is capable of making a successful adjustment to work positions that exist in significant numbers in the national economy and can work gainfully, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. AR 32-33.

The ALJ's decision became final on February 3, 2012, when the Appeals Council of the Social Security Administration denied Plaintiff's request for administrative review of the decision. On September 14, 2012, Plaintiff filed the instant action requesting judicial review of the Administration's decision, moving for summary judgment. On December 19, 2012, Defendant cross-moved for summary judgment. The Court now turns to the substance of those motions.

## II. LEGAL STANDARD

### A. Standard for Reviewing the ALJ Decision

Pursuant to 42 U.S.C. § 405(g), the Court has authority to review the ALJ decision. The Court may reverse the ALJ decision only if it is not supported by substantial evidence in the record, or if the ALJ failed to apply the proper legal standard. 42 U.S.C. § 405(g); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001). "Substantial evidence is such relevant evidence which, considering the record as a whole, a reasonable mind might accept as adequate to support a

3

Case No.: 5:12-CV-01649-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

conclusion," (Id. (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)), and it "means more than a scintilla but less than a preponderance" (Jameson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ decision. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

### B. Standard for Determining Disability

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment," which has lasted or can be expected to last "for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must be so severe that a claimant is unable to do his previous work, and cannot engage in any other kind of substantial gainful work that exists in the national economy given his age, education and work experience, 42 U.S.C. § 423(d)(2)(A). Additionally, the claimant's impairment must have begun while the claimant was insured for disability insurance benefits, 42 U.S.C. § 423(a)(1)(A).

The ALJ assesses disability for Social Security purposes using the following five-step evaluation process:

> 1) The ALJ must first determine whether the claimant is presently engaged in substantially gainful activity. 20 C.F.R. §§404.1520(b), 416.920(b). If so, the claimant is not disabled and the claim is denied; otherwise the evaluation proceeds to step two.
>
> 2) The ALJ must then determine whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. §§404.1520(c), 416.920(c). If not, the claimant is not disabled and the claim is denied; otherwise the evaluation proceeds to step three.
>
> 3) The ALJ must then determine whether the claimant's impairment or combination of impairments meets or medically equals the requirements of the Listing of Impairments 20 C.F.R. §§404.1520(d), 416.920(d). If so, the claimant is disabled and benefits are awarded; otherwise the evaluation proceeds to step four.

4)  The ALJ must then determine the claimant's residual functional capacity ("RFC") [1] despite limitations from the claimant's impairments. 20 C.F.R. §§404.1520(e), 416.920(e). If the claimant can still perform work that he has done in the past, the claimant is not disabled and the claim is denied. The claimant carries the initial burden of proving a disability. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005). If the claimant proves that he is unable to perform past relevant work, a prima facie case of disability is established, and the evaluation proceeds to step five.

5)  In the fifth and final step, the burden shifts to the Commissioner to establish that the claimant can perform "a significant number of other jobs in the national economy." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002). The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the medical Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app.2. Id. If the Commissioner meets the burden, the claimant has failed to establish disability. Id.

### III.  DISCUSSION

The specific issues raised in this case are whether the ALJ's decisions as to (a) Plaintiff's RFC and (b) Plaintiff's credibility are supported by substantial evidence. Plaintiff requests that the Court answer these questions in the negative, and accordingly reverse the ALJ's final decision and remand the case to the Social Security Administration for an award of benefits. See Memorandum in Support of Plaintiff's Motion for Summary Judgment, ECF No. 13 ("Pl. MSJ"), at 11. Alternatively, Plaintiff requests that this case be remanded for further administrative proceedings to cure any legal errors. See Pl. MSJ at 11. Defendant conversely asks that the Court answer the questions presented in the affirmative, and affirm the ALJ's decision. See Defendant's Cross-Motion for Summary Judgment and Memorandum in Support of Cross-Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment, ECF No. 20 ("Def. MSJ"), at 8.

---

[1] A claimant's residual functional capacity ("RFC") is what he or she can still do despite existing exertional and non-exertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

### A. The ALJ's decision is properly supported by substantial evidence as to the Plaintiff's Residual Functional Capacity.

Plaintiff argues that the ALJ erred in assessing Plaintiff's RFC and in rejecting the medical opinion of examining physician Morton Felix, Ph.D., over those of non-examining State agency medical experts who reviewed the evidence and rendered opinions. Pl. MSJ at 3-7. Defendant contends that the ALJ properly assessed the medical evidence as to Plaintiff's RFC and correctly rejected Dr. Felix's opinion in favor of the State agency reviewing doctors' opinions, since the record supported the opinions of the latter. Def. MSJ at 2-7.

In evaluating opinion evidence, the ALJ is required to consider the medical opinions of each case record together with the rest of the relevant evidence received. 20 C.F.R. § 416.927 (b) and (e)(2)(ii). Generally, more weight is given to a treating or examining doctor's opinion than to the opinion of a source who has not examined the Plaintiff. 20 C.F.R. § 416.927 (c). However, if a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may reject the treating or examining doctor's opinion "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible," Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008), and only by providing specific and legitimate reasons that are supported by substantial evidence. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005), citing Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A non-treating or non-examining physician's opinions may serve as substantial evidence when those opinions are consistent with the independent clinical findings or other evidence in the record. See Thomas, 278 F.3d at 957. The weight given to the opinions of such sources "will depend on the degree to which they provide supporting explanations for their opinions." 20 C.F.R. § 416.927 (c)(3).

In the instant case, the ALJ found that Plaintiff has a full-range RFC with some nonexertional limitations, namely that Plaintiff is limited to performing simple routine tasks and having only occasional contact with coworkers and the public. AR 24. According to the classification of medical opinions pursuant to the Code of Federal Regulations, the ALJ first looked for an opinion by a treating physician regarding Plaintiff's RFC, but there was none in the

6

record. AR 31, Pl. MSJ 6, Def. MSJ 3. Without an opinion by a treating physician, the ALJ next reviewed the opinion of examining physician Dr. Morton Felix, Ph.D.; however, the ALJ decided to reject Dr. Felix's assessment of Plaintiff's RFC, finding that it was not as consistent with the record as a whole and opining that Plaintiff had manipulated the physician. AR 31. The ALJ next reviewed the opinions of several State agency experts and was persuaded by their opinions, which found that the evidence showed that Plaintiff was "faking" the intensity of his symptoms for secondary gain. AR 24-29.

More specifically, on February 6, 2009, Dr. Felix performed a consultative psychological examination of Plaintiff. AR 27-28, 390-394. Plaintiff told Dr. Felix about having bipolar disorder, ADHD and Tourette's syndrome, about his history of sexual abuse and substance abuse, and talked about his past jobs and his tendency to quit. Id. At that one-time examination, the psychologist observed Plaintiff in "a rocking posture… waiting for the rain to stop," which Dr. Felix noted "one sees a good deal in mental hospitals or among severely disturbed individuals." Id. Dr. Felix diagnosed severe anxiety and Tourette's syndrome, as well as mood and personality disorders not otherwise specified. Id. Dr. Felix's opinion was the only medical opinion discussing Plaintiff's RFC: the doctor opined that Plaintiff would have no problem obtaining jobs and executing simple or even complex tasks in a vocational context, but his mental problems would affect absenteeism, productivity and reliability. Id.

These work ability restrictions described by Dr. Felix appear to be inconsistent with several pieces of evidence and testimony from the record. First, the psychiatric review completed in January 2008 by State agency expert Nasra S. Haroun, M.D., contradicts that of Dr. Felix. AR 27, 348-358. Dr. Haroun reviewed Plaintiff's record and concluded that the evidence does not support the presence of a severe medically determined position and opined that Plaintiff's impairments would not prevent him from working at least at a medium or light exertional position involving simple repetitive tasks. AR 27, 358. Dr. Haroun noted that Plaintiff's diagnosis with Tourette's syndrome at age nine was never reaffirmed or treated and found that Plaintiff has no limitations in concentration, persistence and activities of daily living, and only mild limitations in maintaining

social functioning. The physician also noted that Plaintiff had admitted to lying about his condition in order to manipulate the system. Id. State agency medical consultant Mohamed O. Nawar, M.D., subsequently completed a case analysis based on Dr. Haroun's review, noting that Plaintiff is not credible, and that his impairments would not prevent him from working at least at a medium or light exertional position, and at least performing simple, repetitive tasks. AR 27, 361.

Next, at a subsequent psychiatric review conducted in March 2009, State agency medical consultant P. Davis, Psy.D., made similar findings as those made by Dr. Haroun, concluding that there is insufficient evidence of a severe mental condition. AR 28-29, 407. State agency medical consultant C. Aiello completed a case analysis in April 2009, in which he agreed with Mr. Davis' findings and called attention to the issue of Plaintiff's credibility. AR 28, 411.

Thereafter, in June 2009, State agency expert Dr. Biala, M.D., noted on Plaintiff's file that there is insufficient evidence of a severe mental condition. AR 28, 412. In the case analysis Dr. Biala completed that same day he noted that at the initial Social Security Administration interview in April 2008 Plaintiff had avoided eye contact and rocked back and forth, but after the end of that meeting and while at the reception area he was behaving normally, holding a conversation on a cell phone, evidence suggesting that he was malingering. AR 26, 227, 424-425.

The ALJ found the cumulative opinions of the state experts to be convincing, and found further evidence that Plaintiff tried to manipulate opinions of the medical professionals. AR 29. Particularly, at an April 2009 interview during Plaintiff's incarceration with counselor K. Spano of Mule Creek State Prison, Plaintiff displayed obvious tics, wrung his fingers, shook visibly, and behaved dramatically. AR 29, 524-526. However, a month later, Plaintiff saw a nurse, at which time he had clear speech, good eye contact, no thought disorder, and he denied any auditory or visual hallucinations. AR 29, 523.

Thereafter, prison psychiatrist Dr. Fithian examined Plaintiff in July 2009 upon referral by Ms. Spano. During the examination, Plaintiff made repetitive motions with his finger and hands, said he was depressed and unable to control his sexual behavior, and appeared extremely obsessive and compulsive; Dr. Fithian seemed to believe Plaintiff: he said that "in all his years, he had not

8
Case No.: 5:12-CV-01649-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

come across anyone who appeared more troubled". AR 29, 426-427, 512. However, Dr. Fithian never discussed Plaintiff's RFC. AR 31. Lastly, during Plaintiff's incarceration in 2010, Dr. John Church, M.D. of Avenal State Prison, diagnosed Plaintiff with schizoaffective disorder; however he too did not opine on Plaintiff's RFC. AR 30-31, 572-577.

The only medical opinion discussing Plaintiff's RFC and reporting that Plaintiff would have difficulty keeping jobs is the one made by examining physician Dr. Felix. AR 27-28, 390-394. The ALJ found that the conclusions drawn by Dr. Felix as to Plaintiff's work ability restrictions appear to be the result of Plaintiff's self-reports and successful manipulation tactics. AR 31. The fact that a doctor's report is based on the plaintiff's subjective complaints is a legitimate reason to reject that report. See Bayliss, 427 F.3d at 1217. In more than one instance, Plaintiff admitted to lying and "faking" his condition for secondary gain, so the ALJ found that "Dr. Felix afforded the claimant more credibility than [the ALJ], and his opinion is not as consistent with the record as a whole." AR 31. The ALJ's adverse credibility determination supports the limited rejection of the examining physician's opinion because it was primarily based on Plaintiff's subjective comments about his condition. See Tommasetti, 553 F.3d at 1041. The ALJ found that the opinions expressed by several State agency medical consultants on the mental aspects of the case are consistent with the record as a whole, and provide substantial evidence for the finding of Plaintiff's RFC. See Thomas, 278 F.3d at 957.

Given these numerous sources and the explanations provided, the Court finds that the ALJ considered the evidence in the record in detail. The ALJ's assessment of Plaintiff's RFC and decision to reject the examining physician's opinion thereon were based on the overwhelming evidence of the record suggesting that Plaintiff not only manipulated the system, but also admitted to doing so. Accordingly, the Court concludes that the ALJ did not err in rejecting assessing Plaintiff's RFC and in rejecting the opinion of Dr. Felix.

**B. The ALJ's decision is properly supported by substantial evidence as to the Plaintiff's credibility.**

Plaintiff argues that the ALJ's decision also erred in assessing Plaintiff's credibility and improperly discounted his testimony. Pl. MSJ at 7-10. Defendant contends that substantial evidence supports the ALJ's credibility determination. Def. MSJ at 7-8. Generally, a claimant's credibility becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective statements may tell of greater limitations than can medical evidence alone. Social Security Rule (SSR) 96–7p (1996). In assessing the claimant's credibility, the ALJ may use "ordinary techniques of credibility evaluation," such as considering the claimant's reputation for truthfulness and any inconsistent statements in his testimony. Fair v. Bowen, 885 F.2d 597, 604 n. 5 (9th Cir. 1989), Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ is permitted to consider contradictions between relevant medical evidence and claimant's testimony in a credibility assessment. Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1999). The ALJ must give specific, convincing reasons for rejecting the claimant's subjective statements. Fair at 602.

In this case, the ALJ found that Plaintiff has admitted to lying and "faking" his condition for secondary gain in several instances. AR 30. In July and August 2006, as well as in October 2007, Plaintiff stated that he has never had any mental health symptoms and that he manipulated the system in order to get transferred closer to home. AR 26, 342-344. During his first interview with the Social Security Administration office, Plaintiff avoided eye contact and rocked back and forth, and minutes later, was seen at the reception behaving normally and having a conversation over the phone. AR 26, 227. As reflected in the medical reports discussed in the previous section and his wide variety of diagnoses resulting from numerous examinations by State agency medical consultants, the ALJ found that Plaintiff has made different interpretations to different medical personnel and has not maintained a behavior consistent with the severity of his alleged disorders. AR 26-30.

The ALJ also was not convinced as to the intensity, persistence and limiting effects of Plaintiff's alleged symptoms in view of the three function reports completed by Plaintiff and his mother, all of which showed that Plaintiff has no limitation in daily living and only a mild limitation in maintaining social functioning. AR 25-27, 200-214. If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations. See Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999), Fair 885 F.2d at 603.

Lastly, the ALJ found that Plaintiff's criminal activities, which involve crimes of moral turpitude and grand theft, also affected his credibility. AR 31. A plaintiff's criminal record and substance abuse are valid credibility factors for the ALJ to consider. Rogers v. Comm'r Soc. Sec., No. 09-01972, 2011 WL 445047, at *9 (E.D. Cal. Jan. 25, 2011) (citing Smolen 80 F.3d at 1284).

Based on the above, the Court finds that the ALJ provided clear and convincing reasons to reject Plaintiff's testimony and that the ALJ did not arbitrarily discredit Plaintiff. The argument put forth by Plaintiff that his narcissistic personality disorder caused him to "misle[ad] medical professionals in order to obtain the result he wanted" is circular and also lacks relevant legal citations or evidentiary support. Affording the ALJ's credibility determination the deference to which it is entitled, the Court finds no error.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Cross-Motion for Summary Judgment is GRANTED. The clerk shall CLOSE this file upon entry of judgment.

**IT IS SO ORDERED**

Dated: September 25, 2013

_____
EDWARD J. DAVILA
United States District Judge

11
Case No.: 5:12-CV-01649-EJD
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT